(602 P.2d 115)
No. 49,887

GERTRUDE ADAMS, *Plaintiff-Appellee,* v. DEVAUN C. ADAMS, *Defendant-Appellant,* BIRDIS WESTBROOK and HAROLD BARNES, *Defendants.*

Petition for review denied January 29, 1980.

Opinion filed November 2, 1979.

*William H. Stowell,* of Phillipsburg, for the defendant-appellant.
*Terry E. Relihan,* of Smith Center, for the plaintiff-appellee.

Before SWINEHART, P.J., ABBOTT and PARKS, JJ.

SWINEHART, J.: Defendant DeVaun C. Adams appeals from an adverse summary judgment arising out of plaintiff's action for the partition of real estate and defendant's counterclaim for quiet title.

Plaintiff Gertrude Adams is the widow of W. C. Adams and defendant DeVaun Adams is the son of W. C. Adams. W. C. Adams and his first wife were the owners of the real estate in question. The first Mrs. Adams died intestate and of her interest

in the real estate, one-half went to W. C. Adams, her surviving husband, and one-half to DeVaun Adams, her son. W. C. Adams subsequently married the plaintiff Gertrude Adams in 1964, and on June 18, 1968, they executed a quitclaim deed to the property to DeVaun. This deed was not physically delivered to DeVaun Adams.

W. C. Adams owned a safe deposit box which DeVaun Adams and his wife had the privilege of using for the storage of their personal papers. DeVaun was not a co-owner of and never had a key to the box. However, with his father's permission he could enter the box. W. C. Adams informed DeVaun that the deed to the realty had been placed in the safe deposit box with DeVaun's other personal property, although DeVaun had never seen it.

Upon W. C. Adams' death on December 29, 1969, his estate was opened and Doyle D. Rahjes was appointed administrator. The administrator performed the duties of his office, filed and published his notice of appointment, filed the inventory and appraisement, litigated the claims, and proceeded to final settlement and discharge. Defendant DeVaun Adams received notice of all proceedings and was a party to them. He verbally called the administrator's attention to the fact that he was the owner of the disputed property by reason of the aforementioned deed executed by his father and Gertrude Adams, and that the deed was in his father's safe deposit box. Two searches were made of the contents of the box by the administrator for the deed, once in the presence of DeVaun Adams and his wife. These two searches did not reveal or discover the missing deed. DeVaun did nothing further during the pendency of the estate proceedings to assert his claim or interest in the property. In fact, his first endeavor in that regard came when the deed was found on December 9, 1971, among his personal property which had been in his father's safe deposit box and in the possession of the administrator until the estate was closed, at which time the executor released the same to DeVaun. It was only then that DeVaun filed the deed of record and exerted his interest from that time forward by collecting the rents from the tenants. Prior to that time W. C. Adams, his administrator during the pendency of the estate, and Gertrude Adams had exercised exclusive control over the property by collecting the rents. Shortly thereafter plaintiff filed her petition for partition and in his answer DeVaun counterclaimed for quiet title.

The trial court by its summary judgment granted partition of

the property and quieted the title in plaintiff, on the ground that the decree of the probate court regarding the property was res judicata. Therefore, in the partition action decree the property was divided according to the respective interests of plaintiff Gertrude Adams and defendant DeVaun Adams, as determined by the probate court.

Before considering the defendant's allegation that summary judgment was improper because material questions of fact still exist, we will consider the question raised by plaintiff in her brief which concerns the question of jurisdiction of the trial court to consider the quiet title action set up by defendant's counterclaim. In the counterclaim he asserted that the property was not a part of the W. C. Adams estate because it had been transferred to him by quitclaim deed prior to his father's death.

If the trial court lacked jurisdiction, then the question raised on appeal by defendant need not be discussed. We will first consider this question of jurisdiction.

As can be seen from the facts set forth above, DeVaun failed to raise an allegation of his ownership to the property in question in the probate court proceedings of the estate of W. C. Adams within the statutory period (K.S.A. 59-2239 [Corrick, 1964]). Accordingly, the plaintiff asserts that the district court was without jurisdiction to entertain DeVaun's claim of ownership to the realty because the probate court was vested with exclusive original jurisdiction of the cause.

The probate proceedings regarding the W. C. Adams estate were conducted prior to court unification. During all relevant times, K.S.A. 59-2239 provides that all demands against an estate must be filed within nine months (now six months) after the first published notice to creditors required under the provisions of the probate code. "The characterization of the nonclaim statute as a special statute of limitations is found throughout the Kansas cases [citations omitted]." *Gano Farms, Inc. v. Estate of Kleweno,* 2 Kan. App. 2d 506, 508, 582 P.2d 742, *rev. denied* 225 Kan. 844 (1978); and that section, rather than a general statute found elsewhere in the civil code, controls the time for asserting a demand against a decedent's estate. *In re Estate of Bowman,* 172 Kan. 17, 238 P.2d 486 (1951).

Prior to unification, the general powers of the probate court were set forth in K.S.A. 59-301 (Corrick, 1964). Among other

things, they were courts of record and could exercise "such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts." K.S.A. 59-301(12). The long-recognized rule is that the probate court is to administer all property of a decedent because it has exclusive original jurisdiction thereof, *Houdashelt v. Sweet,* 163 Kan. 97, 180 P.2d 604 (1947), and cases cited therein; and retains such inventoried property under its jurisdiction until appropriate proceedings establish it is not properly an asset of the estate, *In re Estate of Bowman,* 172 Kan. 17. Furthermore, this exclusive original jurisdiction has been held to encompass the power to determine a question of title to or ownership of property when necessary to final settlement and distribution, unless the probate code expressly provides otherwise. This includes a question regarding title to real estate and applies whether the decedent died testate or intestate. *Houdashelt v. Sweet,* 163 Kan. at 102, and cases cited therein.

Furthermore, K.S.A. 59-2249 (Corrick, 1964) states:

"The decree shall name the heirs, devisees, and legatees, describe the property, and state the proportion or part thereof to which each is entitled. Said decree shall be binding as to all the estate of the decedent, whether specifically described in the proceedings or not. In the estate of a testate decedent, no heirs need be named in the decree unless they have, as such, an interest in the estate.

"No final decree shall be entered until after the determination and payment of inheritance taxes. When the final decree includes real estate, such decree, or a certified copy thereof, may be entered on the transfer record of the county clerk of the proper county; and when any such decree which includes real estate shall become final, it shall be the duty of the probate court to transmit a certified copy thereof to the county clerk and the county clerk shall enter the name on the transfer record in his office."

The necessity of recognizing the finality of an order of final settlement is well stated in *In re Estate of Bowman,* 172 Kan. at 25, and *In re Estate of Yetter,* 183 Kan. 340, 346, 328 P.2d 738 (1958). The rationale is grounded in the need to protect subsequent purchasers of real property. "Considering and construing the various pertinent provisions of the probate code, we think they disclose a deliberate legislative intent and purpose to provide for an early settlement of titles to real property in order that persons purchasing or dealing therewith might do so with assurance respecting the validity of such titles." Otherwise titles to realty involved in probate proceedings could be challenged successfully for many years. *In re Estate of Bowman,* 172 Kan. at 25.

The defendant acknowledges that an order of final settlement of the probate court which is not appealed becomes final and conclusive against collateral attack. However, he strongly disputes plaintiff's contention that his claim to ownership was a "demand" under K.S.A. 59-2239 and due to his failure to so claim within the statutory claim period or appeal from the final settlement, he is forever barred from challenging the probate court's determination of ownership. Rather, he contends that this is a partition action where equitable considerations may be considered and where the code of civil procedure alone controls.

We must first consider whether the defendant's claim to ownership was a "demand" within K.S.A. 59-2239. Neither party has cited case authority involving the same factual situation as presented here, nor has further research disclosed any. Nevertheless, several analogous cases provide some guidance.

In *Gantz v. Bondurant,* 159 Kan. 389, 155 P.2d 450 (1945), title to 400 acres of land was in dispute. The administrator of Bondurant's estate succeeded to an action commenced by Bondurant to recover land from his deceased son's estate pursuant to an oral agreement between the father and son in which the father paid the consideration for the land. No administration proceedings had ever been held in the son's estate. However, over one year after the son's death, his widow obtained a decree of descent from the probate court from which no appeal was ever taken. The court declared:

"*The determination of an issue of ownership to real estate* is as much a prerequisite to the proper distribution of a decedent's estate as the determination of any money demand, and a claim to all or a portion of the decedent's property must be asserted originally in the probate court irrespective of whether the claim be based upon legal or equitable grounds or whether decedent died testate or intestate." (Emphasis supplied.) *Gantz v. Bondurant,* 159 Kan. 389, Syl. ¶ 2.

The court relied in part upon *Burns v. Drake,* 157 Kan. 367, 139 P.2d 386 (1943), which involved an action to enforce specific performance of an oral contract to convey land by "will or deed" while administration proceedings were in progress.

The same rule was applied in *In re Estate of Bourke,* 159 Kan. 553, 156 P.2d 501 (1945), where the court held that claim to an interest in estate property, whether real or personal, either as a surviving partner or as an individual was a demand covered by the nonclaim statute and failure to exhibit a demand within the statutory time period barred an action to recover the property. *Cf.*

*Houdashelt v. Sweet,* 163 Kan. 97 (action to set aside deed to real estate and to bring property into an estate).

Here the defendant seeks, in effect, to remove the real estate from the estate of W. C. Adams through his counterclaim, asserting ownership on the basis of the deed he discovered after the close of his father's estate proceedings. A review of the above authorities compels a conclusion that the defendant's claim of ownership constituted a demand within the meaning of K.S.A. 59-2239. We find that the district court lacked jurisdiction to consider his counterclaim and the probate court's order of final settlement cannot be attacked collaterally in the plaintiff's partition action.

Reading the provisions of the probate code in pari materia further bolsters the position taken by the plaintiff. K.S.A. 59-2252 provides for reopening a proceeding after title to realty has been determined where only service by publication was had within one year after the date of the judgment or decree. This express allowance precludes a similar procedure where personal service was had, as in the instant action.

Here the defendant was aware of the alleged gift of land by deed prior to W. C. Adams' death. He chose to rely upon the administrator's statement that the deed did not exist and neglected to file a demand, seek personal access to the contents of the safe deposit box, or otherwise attempt to prove his full ownership interest in the property. He acquiesced in the final settlement and failed to appeal to the district court. Based upon the above authorities, he may not now collaterally attack the decision of the probate court in his counterclaim in the plaintiff's partition action.

Defendant urges that since his counterclaim was raised in a partition action, which is equitable in nature, the district court had authority to determine title despite the final order of the probate court. K.S.A. 60-1003(*d*) provides:

"The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests, or may refuse partition if the same would result in extraordinary hardship or oppression."

Defendant relies upon *Hurley v. Painter,* 180 Kan. 552, 306 P.2d 184 (1957), which discusses the equitable powers of a district court in a partition action. There the court declared there

was nothing in the probate code to deprive a district court of its equitable partition powers. Therefore, a party could not claim the district court was without power to determine ownership interests even though the record title to the real property was in the name of the decedent and the time for asserting claims in her estate had expired. That case may be distinguished, however, because nothing in the opinion indicates that probate proceedings resulting in a final order occurred. It is only stated that a purported will of the decedent was refused probate. Additionally, all the cases relied upon by the court to support its conclusion may also be distinguished from this action. For example, in *Ames v. Ames,* 170 Kan. 227, 229-230, 225 P.2d 85 (1950), a partition action, the administrator admitted that plaintiff, defendant and decedent were owners of the property in question. There the court stated:

"If this were a partition action in which heirs, as such, sought to carve out and have set aside to them portions of a decedent's estate the district court would not have jurisdiction. (*Felton v. Rubow,* 163 Kan. 82, 179 P.2d 935; *Houdashelt v. Sweet,* 163 Kan. 97, 103, 180 P.2d 604). That, however, is not this case. Here the title to the respective interests of plaintiff (appellee), appellant and their mother had vested in each of them prior to the mother's death. In asking partition in the instant case appellee simply asserted his own, his defendant brother's and their mother's interests as they stood prior to her death and sought to have those interests segregated. In this action appellee and appellant in legal contemplation occupy the same position as complete strangers would occupy towards decedent's estate. That is also true concerning the other defendants against whom it was sought to have the interests of the cotenants quieted. Under these circumstances the partition action was properly brought in the district court. (*Stuart v. Hoatson,* 163 Kan. 117, 180 P.2d 609.)"

Further, in *Peterson v. Peterson,* 173 Kan. 636, 251 P.2d 221 (1952), factually distinguishable from our case, and also cited in *Hurley,* the court stated the principle as follows:

"[T]he owner of an undivided interest in real property as a tenant in common may maintain an action in the district court to partition such property even though a former owner of one of the undivided interests therein is deceased, and his estate is in process of administration." 173 Kan. at 640.

Again, unlike here, there was no dispute as to the titled interest of the party seeking partition.

We find under the facts of this case that the district court correctly granted summary judgment as it is clear that the defendant received proper notice in all probate proceedings in which the real property was inventoried as an estate asset, did not

object to the petition for final settlement, did not appeal therefrom, and may not now relitigate the question of title.

Judgment is affirmed.